1

2

3

4                                    UNITED STATES DISTRICT COURT

5                                 NORTHERN DISTRICT OF CALIFORNIA

6

7    JENNIE Y. CONTRERAS,                          Case No.  19-cv-00305-DMR

              Plaintiff,
8
                                                   **ORDER ON CROSS MOTIONS FOR**
     v.
9                                                  **SUMMARY JUDGMENT**

10   NANCY A. BERRYHILL,                            Re: Dkt. Nos. 22, 23

              Defendant.
11

12          Plaintiff Jenny Contreras moves for summary judgment to reverse the Commissioner of the

13   Social Security Administration's (the "Commissioner's") final administrative decision, which found

14   Contreras not disabled and therefore denied her application for benefits under Title XVI of the Social

15   Security Act, 42 U.S.C. § 1381 *et seq*.  The Commissioner cross-moves to affirm.  For the reasons

16   stated below, the court denies Contreras's motion and grants the Commissioner's cross motion.

17   **I.     PROCEDURAL HISTORY**

18          Contreras filed an application for Supplemental Security Income ("SSI") benefits on June

19   29, 2015, alleging disability beginning on January 31, 2015.  Administrative Record ("A.R.") 84-

20   85, 176-80.  The application was initially denied on September 9, 2015 and again on reconsideration

21   on February 9, 2016. A.R. 84-93, 95-104, 109-14, 117-22.  On March 3, 2016, Contreras requested

22   a hearing before an Administrative Law Judge ("ALJ").  A.R. 123-24.  The hearing took place on

23   July 11, 2017 before ALJ Teresa Hoskins Hart.  A.R. 40-83.

24          In a decision dated February 14, 2018, the ALJ found that Contreras is not disabled.  A.R.

25   16-39.  The ALJ determined that Contreras has the following severe impairments: degenerative disc

26   disease, bilateral carpal tunnel syndrome status post release, and obesity.  A.R. 22.  The ALJ found

27   that Contreras retains the following residual functional capacity ("RFC"):

28          To perform light work as defined in 20 CFR 416.967(b) except she can no

more than frequently climb stairs and ramps but only occasionally climb ladders, ropes, and scaffolds; she can no more than occasionally stoop, kneel, crouch, and crawl; she can no more than frequently handle, finger, and feel; and she must avoid concentrated or frequent exposure to unprotected heights or nearby moving machinery.

A.R. 27.

Relying on the opinion of a vocational expert ("VE") who testified that an individual with such an RFC could perform other jobs existing in the economy, including work as a companion, cleaner, sales attendant, or storage facility rental clerk, the ALJ concluded that Contreras is not disabled.

The Appeals Council denied Contreras's request for review on November 13, 2018.  A.R. 5-10.  The ALJ's decision therefore became the Commissioner's final decision.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).  Contreras then filed suit in this court pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a mere scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted).  When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was

2

inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

In reaching its decision, the court has read and considered the entire record in this case. For the purposes of brevity, the court summarizes only the facts relevant to its decision.

## III.   ISSUES PRESENTED

Contreras argues that the ALJ erred in (1) weighing the medical evidence; (2) assessing her credibility; and (3) eliciting testimony from the VE.

## IV.   DISCUSSION

### A.   Weighing of the Medical Evidence

Contreras argues that the ALJ erred in assigning little to no weight to the medical source statements provided by her treating physician, Juan Posada, M.D.

#### 1.   Legal Standard

Courts employ a hierarchy of deference to medical opinions based on the relation of the doctor to the patient. Namely, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Id.*

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities. *Reddick*, 157 F.3d at 722. A treating physician's opinion, while entitled to more weight, is not necessarily conclusive. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996). If another doctor

United States District Court
Northern District of California

3

United States District Court
Northern District of California

contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion. *Lester*, 81 F.3d at 830. The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citation omitted). "[B]road and vague" reasons do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). This same standard applies to the rejection of an examining physician's opinion as well. *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa*, 143 F.3d at 1244. An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 416.927(c)(4).

### 2. Discussion

State agency medical consultant J. Linder, M.D. performed the initial review of the medical evidence. A.R. 84-93. Dr. Linder opined that Contreras can frequently lift or carry 10 pounds; occasionally lift or carry 20 pounds; stand, walk, or sit with normal breaks for 6 hours in an 8-hour workday; frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; and occasionally stoop, kneel, crouch, and crawl. A.R. 90-91. Dr. Linder did not assign any manipulative limitations (i.e. handling, fingering, feeling). State agency medical consultant E. Wong, M.D. reviewed the record on reconsideration and adopted the RFC assessed by Dr. Linder. *See* A.R. 101-02.

Dr. Posada submitted two medical source statements on behalf of Contreras. The first

4

United States District Court
Northern District of California

statement is dated May 8, 2017.  A.R. 429-32.  Dr. Posada diagnosed Contreras with carpal tunnel syndrome, cervical spine stenosis, sciatica, chronic back pain, asthma, migraines, chronic depression, and knee pain.  A.R. 429.  He opined that Contreras can walk half a block without rest or severe pain; sit for 6-7 minutes at a time before needing to get up; stand for 8 minutes at a time without needing to sit down or walk around; and sit, stand, and walk for less than one hour total in an eight-hour workday.  A.R. 430.  According to Dr. Posada, Contreras can rarely lift less than 10 pounds and never lift more than 10 pounds; occasionally look down; rarely turn her head right or left, look up, or hold her head in a steady position; rarely twist; and never stoop, crouch, climb ladders, or climb stairs.  A.R. 431.  Dr. Posada indicated that Contreras's symptoms would constantly interfere with the attention and concentration necessary to perform even simple work tasks.  A.R. 430.  He opined that she would miss work more than four days per month because of her conditions.  A.R. 432. Dr. Posada completed another medical source statement on July 25, 2017. A.R. 657-61.  The limitations he assessed in the second opinion are similarly restrictive.  *See* A.R. 658-60.  He also added that Contreras has significant limitations with reaching, handling, and fingering, and can perform these activities for only 30 minutes of an 8-hour workday.  A.R. 658.

The ALJ assigned significant weight to the opinions of the State agency medical consultants. She assessed an RFC that tracks those opinions, except she added manipulative restrictions limiting Contreras to frequent handling, fingering, and feeling.  A.R. 27.  The ALJ assigned little to no weight to Dr. Posada's two opinions.  A.R. 30-31.  Because Dr. Posada's opinions were contradicted by the opinions of the state agency medical consultants, who assessed less restrictive RFC, the ALJ was required to give specific and legitimate reasons supported by substantial evidence to reject his opinions.  *Lester*, 81 F.3d at 830.  The reasons the ALJ cited for discounting Dr. Posada's opinions include that the opinions are inconsistent with Contreras's longitudinal history, objective clinical findings, and her reported activities of daily living ("ADLs").  A.R. 31.  The ALJ also noted that the record contains sparse treatment notes from Dr. Posada and that he did not provide "objective clinical findings to support his extremely restrictive opinions."  A.R. 31.

With respect to the longitudinal medical record and objective clinical findings, the ALJ observed that Contreras's providers "have been unable to find objective clinical or diagnostic

findings that correlate with her symptoms." A.R. 29. A review of the record substantially supports this conclusion. In November 2015, Contreras received a CT scan, which found multilevel degenerative disease of the cervical spine including osteophytosis, calcification of posterior longitudinal ligament, and disc space narrowing notably at C5-C7. A.R. 352. No significant stenosis was found. A.R. 352. Contreras began receiving physical therapy in March 2015 but was discharged from that treatment in October 2015 for missing too many appointments. A.R. 299-303, 378. In May 2015, Contreras received an X-ray of the lumbar spine, which showed that the lumbar vertebral bodies were in normal alignment without evidence of spondylolysis or spondylolisthesis. A.R. 354. There were no acute compression deformities or significant degenerative changes. A.R. 354. Similarly, an MRI of the lumbar spine taken in June 2015 showed normal vertebral alignment, marrow signal, vertebral height, and disc space height. A.R. 355. No focal disc protrusion or central canal stenosis was observed. A.R. 355. Contreras received an electromyography ("EMG")/nerve conduction study ("NSC") in July 2015, which returned normal results. A.R. 336. In November 2015, Contreras was seen by Neera Narang, M.D., for an initial consult in the rheumatology clinic, after which Dr. Narang wrote, "[G]iven [Contreras's] relatively normal exam and ability to 'get up and go' from her chair quite well, I'm not sure there is an organic explanation for these reported symptoms." A.R. 386. In a progress note from a neurosurgery clinic, dated December 18, 2015, treating provider Jason Lifshutz, M.D., observed, "At this point in time I do not have a good explanation for [Contreras's] pain." A.R. 390. He also opined that Contreras showed "very poor effort . . . on the motor examination." A.R. 389. On January 26, 2016, Dr. Narang provided a rheumatology update in which she wrote, "[Contreras's] symptoms have not been correlated well with objective findings – L-spine imaging, EMG/NCS, and neurosurgery evaluation have failed to uncover a clear etiology for these severe, function-limiting symptoms." A.R. 607. Although Contreras displayed less than normal strength in her right upper extremity, Dr. Narang questioned whether her results were "limited by effort." A.R. 605.

Contreras received an MRI of the cervical spine in March 2016. A.R. 440-41. The results showed moderate cervical spondylosis, but no evidence of cord compression or abnormal intramedullary cord signal. A.R. 441. Another set of MRIs was taken in April 2016. In the lumbar

spine, the results showed minimal broad-based disc bulges at L4-5 and L5-S1 without significant central canal stenosis or neuroforaminal narrowing. A.R. 821. There were no acute findings in the thoracic spine. A.R. 822. Mild to moderate central canal stenoses were observed in the cervical spine, with degenerative changes at C4-C7. A.R. 828. However, there were no cord signal abnormalities. A.R. 822. Another MRI of the lumbar spine, taken in March 2017, showed vertebral alignment within normal limits, with no acute fractures, significant degenerative changes, or disc disease. A.R. 717. There were also no signal abnormalities of the spinal cord. A.R. 717. Contreras began complaining of tingling, numbness, and weakness in her hands as early as December 2015. A.R. 418. She received right carpal tunnel surgery in August 2016 and left carpal tunnel surgery in November 2016. A.R. 540, 570. A physical examination in April 2017 showed that Contreras had a painless range of motion in her neck, no vertebral tenderness, and 5/5 bilateral strength in her upper and lower extremities. A.R. 695. Clinical observations in July 2017 reflect that Contreras exhibited no acute distress, denied neck pain, and displayed no motor or sensory deficits. A.R. 666, 668. These last two records were written close in time to Dr. Posada's two source statements. *See id.*

Contreras relies on two records to contradict the ALJ's characterization of the medical evidence. The first is an EMG conducted in May 2017, after Contreras's carpal tunnel release surgeries. A.R. 594. The results showed moderately severe carpal tunnel syndrome in both wrists, with worse results in the left wrist than were present prior to the surgery. A.R. 594. However, the record is devoid of any findings about the extent to which Contreras's remaining carpal tunnel symptoms impact her manipulative abilities. Although she reported some weakness in her right hand post-release, she also stated that she no longer feels numb in that hand. A.R. 449. Treatment notes from April and July 2017 record 5/5 bilateral strength in her upper extremities and no motor or sensory deficits. A.R. 695, 668. Further, Contreras does not explain why Contreras's remaining carpal tunnel symptoms are not adequately captured by the manipulative limitations assessed by the ALJ. She also does not explain how the medical evidence reflects the extreme manipulative limitations assessed by Dr. Posada, which include rarely lifting less than 10 pounds, never lifting more than 10 pounds, and reaching, handling, or fingering for 30 minutes of an 8-hour workday.

A.R. 431, 658.   In sum, the medical evidence substantially supports the ALJ's finding that Dr. Posada's manipulative restrictions are excessive in relation to the clinical observations and diagnostic findings in the record.

The second record Contreras cites contains the results from her April 2016 cervical spine MRI.   As noted above, the MRI found mild to moderate central canal stenoses and degenerative changes at C4-C7.   A.R. 828.   Again, the practical impact of these results on Contreras's functional limitations is not explained in the treatment notes or in any medical opinions.   The ALJ assessed functional limitations based on the medical evidence, including that Contreras can only occasionally climb ladders, ropes, and scaffolds, and no more than occasionally stoop, kneel, crouch, and crawl. A.R. 27.   Contreras points to no records that show these limitations are not adequate to account for mild to moderate stenoses in the cervical spine.   In any case, the April 2016 MRI results do not support Dr. Posada's findings that Contreras can sit for only 6-7 minutes and stand for 8 minutes at time, or that her symptoms would constantly interfere with the attention and concentration necessary to perform even simple work tasks.   A.R. 430, 432.   In sum, the court finds that the conflicts between Dr. Posada's restrictions and the medical evidence provide a specific and legitimate reason supported by substantial evidence to discount Dr. Posada's opinions.

The ALJ also cited Contreras's reported ADLs as inconsistent with Dr. Posada's limitations. She cites Contreras's August 2015 exertion questionnaire, in which Contreras reports that she performs some household chores, including cleaning, sweeping, and washing the dishes.   A.R. 218. At that time, she also reported she could drive.   A.R. 219.   In her hearing testimony, Contreras stated that she no longer drives because she does not have a car, but she still uses public transportation. A.R. 57.   She has a pool in her backyard, and she watches her children while they swim.   A.R. 59. The ALJ somewhat overstated the level of daily functioning Contreras reported.   For example, Contreras also stated she can do housework for about 10 minutes before she has to take a break. A.R. 220.   Her daughter does many of the household chores, including making her bed, vacuuming, and running errands.   A.R. 66.   Her daughter also assists her with personal care, including washing her hair and bathing. A.R. 66.   Contreras reports that she can only walk half a block before she has to return home because of the pain.   A.R. 65.   Although Contreras reported in the August 2015

1   questionnaire that she sometimes washes the dishes, she testified at the hearing that she can only lift

2   less than three pounds safely and cannot hold dishes while washing them.  A.R. 62, 66.  It is unclear

3   how Contreras's ability to sit and watch her children swim is inconsistent with the functional

4   limitations assessed by Dr. Posada.  In any case, the ALJ's characterization of Contreras's ADLs

5   somewhat misstates her testimony and is not a specific and legitimate reason to discount Dr.

6   Posada's opinions as to her functional limitations.

7        The harmless error doctrine applies to an ALJ's evaluation of medical opinions.  *See Marsh*

8   *v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015).  Here, the ALJ properly discounted Dr. Posada's

9   opinion to the extent that it conflicted with the medical evidence in the record.  Although the ALJ

10  erred in discounting Dr. Posada's opinion because it conflicted with Contreras's self-reported ADLs,

11  that error is immaterial.  The reasons credited by the court consider the evidentiary record as a whole

12  and are entitled to significant consideration.  *See* 42 U.S.C. § 405(g) ("The findings of the

13  Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

14  conclusive . . . .").  Further, as explained below, the ALJ did not err in discrediting Contreras's

15  credibility.  Accordingly, her self-reports are not fully reliable and do not provide a valid basis to

16  credit Dr. Posada's opinion.  Therefore, the ALJ's error with respect to Contreras's ADLs is

17  harmless.

18        In sum, the medical record as a whole substantially supports the ALJ's conclusion that Dr.

19  Posada did not "provide sufficient rationale with objective clinical findings to support his extremely

20  restrictive opinions."  *See* A.R. 31.

21        **B.      Contreras's Credibility**

22        Contreras argues that the ALJ erred in finding that she was not credible.

23            **1.      Legal Standard**

24        In general, credibility determinations are the province of the ALJ.  "It is the ALJ's role to

25  resolve evidentiary conflicts.  If there is more than one rational interpretation of the evidence, the

26  ALJ's conclusion must be upheld."  *Allen v. Sec'y of Health & Human Servs*., 726 F.2d 1470, 1473

27  (9th Cir. 1984) (citations omitted).  An ALJ is not "required to believe every allegation of disabling

28  pain" or other nonexertional impairment.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing

42 U.S.C. § 423(d)(5)(A)).   However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so.  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).  In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id.* at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (stating that an ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony").  The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281 (citations omitted).  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted).  Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The Ninth Circuit has reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

### 2.      Discussion

The ALJ found that Contreras's testimony was not fully credible based on the "lack of significant abnormality in the objective evidence"; her conservative course of treatment, including over-the-counter ("OTC") medications and prescription pain medications; and her testimony

United States District Court
Northern District of California

regarding her ADLs.  A.R. 28-29.

The court found above that the record substantially supports the ALJ's finding that the medical evidence contains few objective findings of severe impairment.  In addition, multiple medical providers noted that Contreras's self-reports seemed exaggerated.  For example, in November 2015, Dr. Narang reported that Contreras's ability to "get up and go from her chair quite well" seemed to belie an organic explanation for Contreras's extreme symptoms.  A.R. 386.  In December 2015, Dr. Lifshutz commented that Contreras displayed "very poor effort" on her motor exam.  A.R. 389.  In January 2016, Dr. Narang questioned whether Contreras's results on a strength exam were limited by effort.  A.R. 605.  In March 2016, a provider evaluating Contreras for possible prolapse stated that Contreras is not a reliable historian.  A.R. 610.  An unidentified physician (whose opinion is otherwise not at issue) stated in July 2017 that Contreras is malingering.  A.R. 652.  Taken as a whole, the medical evidence of record provides a clear and convincing reason to find that Contreras is not fully credible.

The ALJ's other two reasons for discounting Contreras's credibility are less convincing.  First, the ALJ's statement that Contreras relied solely on OTC and prescription pain medications is not accurate.  She also received carpal tunnel release surgeries in both hands, epidural injections for her pain, and chiropractic manipulation.  A.R. 376, 393, 447, 453, 455, 540, 570, 607-08, 616.  She was also referred to PT multiple times, although it appears that she did not follow through with the recommendations long term.  A.R. 307, 317, 320, 331, 378, 388.  As such, the ALJ's characterization of Contreras's treatment history is incomplete and does not provide a clear and convincing reason to discredit her testimony.  Second, with respect to Contreras's ADLs, the court found above that the ALJ somewhat mischaracterized Contreras's testimony, and that Contreras's statements about her ADLs are more consistent with her alleged degree of limitation than the ALJ described.  However, even if Contreras was consistent in describing her ADLs and her claimed limitations, substantial medical evidence supports a finding that Contreras exaggerated the extent to which she is limited.

Where an ALJ offers both valid and invalid reasons in support of an adverse credibility finding, the court must evaluate whether the ALJ's errors were harmless.  *Batson v. Comm'r of Soc.*

United States District Court
Northern District of California

United States District Court
Northern District of California

*Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).  If the court finds error with respect to a portion of an ALJ's decision, it may nevertheless affirm the finding "so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'"  *Molina*, 674 F.3d at 1115 (quoting *Batson*, 359 F.3d at 1197).  In other words, an ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).  "[I]n each case we look at the record as a whole to determine whether the error alters the outcome of the case."  *Molina*, 674 F.3d at 1115.

In this case, the ALJ's adverse credibility finding is supported by substantial evidence, despite the errors identified above.  The record contains scant evidence of impairments as severe as those alleged by Contreras.  More importantly, the record includes numerous reports that her symptoms seem exaggerated or that she put forth poor effort in examinations.  The ALJ's findings that Contreras's symptoms are not supported in the record specifically relate to her ability to perform work-related activities.  *See Carmickle*, 533 F.3d at 1163 (finding that an ALJ's valid reasons are not "relatively minor" when they are "specific findings related to [the claimant's] ability to perform vocational functions").  Further, the ALJ's errors do not "negate the validity of [her] ultimate conclusion."  *See Batson*, 359 F.3d at 1187.  In other words, the discrepancies noted above with respect to the ALJ's characterization of Contreras's treatment history and testimony about her ADLs do not undermine the ALJ's ultimate conclusion that Contreras overstated the impact of her impairments on her work-related functionality.

In sum, the court finds that the ALJ's partial adverse credibility determination is supported by substantial evidence.

### C.      VE Testimony

Contreras argues that the ALJ erred in the step five analysis because she improperly failed to pose hypotheticals to the VE that contain the limitations supported by Contreras's testimony and Dr. Posada's opinions.  Since the court already found that the ALJ did not err in evaluating either Contreras's credibility or Dr. Posada's opinions, the ALJ also did not err in failing consider that evidence in posing hypotheticals to the VE.

## V.     CONCLUSION

For the reasons stated above, the court denies Contreras's motion and grants the Commissioner's cross-motion.  The Clerk shall enter judgment for the Commissioner and close the file in this matter.


**IT IS SO ORDERED.**

Dated: May 5, 2020

_____
Donna M. Ryu
United States Magistrate Judge